UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARTHA A. WOLFE,                    *
                                    *
            Plaintiff,              *
                                    *
      v.                            *   CIV. NO. SA-13-CA-852-OLG
                                    *
JOHN MCHUGH, Secretary,             *
Department of the Army,             *
                                    *
            Defendant.              *

MEMORANDUM AND RECOMMENDATION

Martha A. Wolfe was a GS-14 contract specialist at the U.S. Army's 410th Contracting Support Brigade (the "Brigade"), Expeditionary Contracting Command, Fort Sam Houston, Texas at the time she retired from the Army, effective February 29, 2012. She instituted this lawsuit, pursuant to the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 alleging that she was subject to discrimination and harassment in employment based upon her age and sex.[1]  Defendant has filed a motion for summary judgment (docket nos. 26, 36), to which motion Wolfe has responded.  (Docket nos. 33, 40).  Having considered the briefs, the summary judgment evidence and the applicable law, the Court is of the opinion the motion for summary judgment should be granted.

---

[1] Although her complaint also alleges a cause of action for retaliation, Wolfe abandoned her reprisal claim during the administrative process. **Defendant's Appendix**, APPX 018-019.

### Summary Judgment

Summary judgment shall be rendered if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Rule 56(a), Fed.R.Civ.P.** The plain language of this rule mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A summary judgment movant or opponent must cite to materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. **Rule 56(c)(1), Fed.R.Civ.P.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out

facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated. **Rule 56(c)(4), Fed.R.Civ.P.**  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, as required by Rule 56(c), the Court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it.  **Rule 56(e), Fed.R.Civ.P.**  In ruling upon a motion for summary judgment, a court must view the evidence in the light most favorable to the opposing party and all justifiable inferences are to be drawn in his favor.  ***Tolan v. Cotton***, --- U.S. ---, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014); ***Anderson***, 477 U.S. at 255.[2]

### Background

Wolfe began working as a Contract Specialist for the military at Kelly Air Force Base in 1984.  She worked at various locations over the years until 2005 when she accepted an assignment with Army Contracting Agency – The Americas, now the 410th Contracting Support Brigade at Fort Sam Houston in San Antonio, Texas.  On or about November 25, 2007, Wolfe was promoted to Chief of Policy and Assessment.  At the time of her retirement on February 29, 2012, she was a Contract Administration Specialist.  Her pay plan and

---

[2] Wolfe argues for denial of defendant's motion based upon the existence of "more than a scintilla of probative evidence."  This appears to refer to a standard applicable to a no-evidence summary judgment in state court.  ***See Boerjan v. Rodriguez***, 436 S.W.3d 307, 312 (Tex. 2014).  It shall not be applied here.

grade was GS-14, and her job series was 1102, which dealt exclusively with contracting services.

On or about July 4, 2010, Sharon Seiffert became the Deputy Director to the Brigade Commander and Wolfe's first-line supervisor. Seiffert operated as Wolfe's rater, managing Wolfe's responsible areas on a day-to-day and month-to-month basis. On or about July 7, 2010, Colonel William Sanders became the Brigade Commander and Wolfe's second-line supervisor. Colonel Sanders operated as her senior rater.

In July, 2011, Seiffert informed Wolfe that she was being reassigned from Policy and Assessment to Chief of Special Staff which included supervising interns. This new position was not in her 1102 Work Series and had nothing to do with her career training in the area of contracting. Mike Hollon, a male 24 years younger than Wolfe, was promoted to her previous position. Wolfe retained the same pay.

On August 4, 2011, Wolfe was relieved of her responsibilities of managing interns. On or around August 23, 2011, she was denied a performance award. On December 18, 2011, Wolfe was once again reassigned to supervising interns and quality assurance evaluators. Then, in early February 2012, she was, once again, relieved of her supervision of interns. She resigned effective February 29, 2012 at the age of 68.

Wolfe first contacted an EEO official on February 21, 2012 and filed a formal complaint of discrimination on March 9, 2012. **Defendant's Appendix**, APPX 002.  Her complaint alleges several discrimination events: (1) constructive discharge, (2) relieved as Chief of Contract Administration Services on February 10, 2012, (3) reassigned to Chief of Contract Administration Services on December 18, 2011, (4) denied performance award on August 23, 2011, (5) relieved as Chief of Contract Administration Services on August 4, 2011, (6) reassigned as Chief of Special Staff on July 18, 2011, and (7) relieved as Chief of Policy and Assessment on July 17, 2011. **Id.**, APPX 001.  The EEO Director construed Wolfe's complaint as alleging harassment and a hostile work environment based upon her sex and her age. **Id.**, APPX 009-011.

## Analysis

### 1. Statute of Limitations

Defendant first contends that summary judgment should be granted in the Army's favor on Wolfe's hostile work environment claim because all incidents which arose more than 45-days before February 21, 2012, Wolfe's first contact with an EEO Counselor, are untimely.  Pursuant to 29 C.F.R. § 1614.105(a)(1), an aggrieved person who believes she has been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must initiate contact with a counselor within 45 days of the date of the matter alleged to be discriminatory or,

in the case of personnel action, within 45 days of the effective date of the action.  Failure to notify the EEO counselor in timely fashion may bar a claim, absent a defense of waiver, estoppel, or equitable tolling.  *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992).  Defendant states that Wolfe's allegation that she was relieved as Chief of Contract Administration Services on February 10, 2012 is her only timely hostile work environment claim.[3]

In response, Wolfe cites to *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  In *Morgan*, the Supreme Court noted that, "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Id.*, at 117.  "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*  "In order for the charge to be timely, the employee need only file a charge within [45 days] of any act that is part of the hostile work environment."  *Id.*, at 118.

Here, Wolfe has alleged multiple reassignments, demotions, the denial of a performance evaluation and constructive discharge

---

[3] Defendant does not challenge the timeliness of Wolfe's claim that she was constructively discharged due to a hostile work environment.

between July 2011 and February 2012 as evidence of a hostile work environment.  The date that she was relieved as Chief of Contract Administration Services on February 10, 2012 is clearly within the 45-day period prior to her initial contact with an EEO counselor. Thus, her hostile work environment claim is timely.  ***See Barnes v. McHugh***, 2013 WL 3561679, at *4 (E.D.La. 2013).  All events she has alleged as part of that claim back to July 2011 can be considered as evidence of the existence of a hostile work environment. Wolfe's hostile work environment claim was timely filed.

## 2. Applicable Claims

In her response to defendant's motion for summary judgment, Wolfe cites to the applicable legal standards for disparate treatment claims under Title VII and the ADEA, as well as for hostile work environment claims based upon sex and age.  **Response**, pp. 8-9.  The government replies that the only claims which have been exhausted are Wolfe's hostile work environment claims.

Federal employees seeking relief under Title VII (or the ADEA) for alleged employment discrimination must exhaust administrative remedies before bringing such a case in federal district court. ***Reveles v. Napolitano***, --- Fed.Appx. ----, 2014 WL 7004789, at *2 (5th Cir. 2014).  An employee may file a lawsuit "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC

investigation that could reasonably be expected to grow out of the initial charges of discrimination." ***Stone v. Louisiana Dept. of Revenue***, --- Fed.Appx. ----, 2014 WL 5654307, at *4 (5th Cir. 2014)(*quoting* ***Fellows v. Universal Rests., Inc.***, 701 F.2d 447, 451 (5th Cir. 1983)). "'[A] charging party's rights should [not] be cut off merely because [s]he fails to articulate correctly the legal conclusion emanating from his factual allegations.'" ***Id.*** (*quoting* ***Simmons—Myers v. Caesars Entm't Corp.***, 515 Fed.Appx. 269, 272 (5th Cir. 2013)(*quoting* ***Sanchez v. Standard Brands, Inc.***, 431 F.2d 455, 462 (5th Cir. 1970)).

In support of its argument that Wolfe's disparate treatment claims are unexhausted, the government relies upon ***Clayton v. Rumsfeld***, 106 Fed.Appx. 268 (5th Cir. 2004) in which the plaintiff brought causes of action for demotion and constructive discharge. The administrative record of Clayton's EEOC charge indicated that she did raise a demotion claim during the administrative process but she did not claim constructive discharge. The district court found that she had not administratively exhausted either claim.

The Court of Appeals affirmed. It held that because plaintiff did not raise constructive discharge in the administrative process, she did not exhaust her remedies as to that issue. In addition, the Court of Appeals noted that Clayton did not object to the framing of the issue by the EEOC and the ALJ, which issue did not

include her demotion claim. *Clayton*, 106 Fed.Appx. at 271. Thus, her demotion claim was abandoned. *Id*.

Under Section V of Wolfe's administrative complaint, entitled Matter(s) Giving Rise to Complaint, the relevant issues are stated as whether Wolfe was "continuously harassed and subjected to a hostile work environment based on Sex (female) and Age ... from 17 July 2011 to 29 February 2012 which forced her to retire early (constructive discharge) effective 29 February 2012?" and whether Wolfe was "discriminated against and subjected to on going harassment (hostile work environment) based on Sex (female) and Age ... when ..." she was demoted, reassigned and denied a performance award. **Defendant's Appendix**, APPX 005. By letter dated June 28, 2012, the EEO Director framed Wolfe's complaint as alleging harassment and a hostile work environment based upon her sex and her age. **Defendant's Appendix**, APPX 012-014. Wolfe was afforded the opportunity to correct the EEO Director if she believed the claims had not been properly identified. **Id**. She was advised that if she failed to correct the identification of the claims, the EEO Director would conclude that Wolfe agrees that the claims have been properly identified. **Id**. Wolfe did not object. In the Fact-Finding Conference of October 16, 2012, Wolfe abandoned her reprisal claim and reenforced that she was claiming she was "subjected to ongoing harassment in a hostile work environment based on age 68, date of birth, and sex, female, 24 from 17 July,

9

2011 to 29 February, 2012." **Id.**, APPX 018-019.  The Fifth Circuit has held that when an employee fails to object to an agency's framing of the complaint, the Court must assume that the issues were correctly framed.  **See Dollis v. Rubin**, 77 F.3d 777, 779-80 (5th Cir. 1995)(*overruled in part on other grounds* **Burlington Northern and Santa Fe Ry. Co. v. White**, 548 U.S. 53 (2006)).

Wolfe responds that, in her complaint filed in this case, she clearly alleged causes of action for sex discrimination under Title VII and age discrimination under the ADEA.  Of course, that fact would not cure her failure to exhaust administrative remedies. Wolfe also states that the facts supporting her hostile work environment claim are equally applicable to her disparate treatment age and sex discrimination claims.  She cites **Clark v. Kraft Foods, Inc.**, 18 F.3d 1278 (5th Cir. 1994), in which the Court of Appeals was required to determine whether the plaintiff's administrative charge of discrimination which alleged "1. I was harassed because of my sex, female. 2. I was sexually harassed," raised an allegation of disparate treatment based upon gender in addition to sexual harassment.  **Clark,** 18 F.3d at 1280.  The Court noted that while the actual scope of an EEOC investigation does not determine whether a claim is exhausted, the EEOC investigated plaintiff's gender-based disparate treatment claim.  **Id**.  The Court of Appeals concluded that while plaintiff's sexual harassment claims were the principal allegations at the administrative stage, she did raise a

gender-based disparate treatment claim sufficient to prompt an EEOC investigation. *Id.*, at 1281. Therefore, administrative remedies for her complaint of gender-based disparate treatment were exhausted and that claim was properly before the court. *Id*.

Several factors distinguish the case before this Court from *Clark*. Under Section V of her administrative complaint, entitled Matter(s) Giving Rise to Complaint, the relevant issues are framed as whether Wolfe was "continuously harassed and subjected to a hostile work environment based on Sex (female) and Age ... from 17 July 2011 to 29 February 2012 which forced her to retire early (constructive discharge) effective 29 February 2012?" and whether Wolfe was "discriminated against and subjected to on going harassment (hostile work environment) based on Sex (female) and Age ... when ..." she was demoted, reassigned and denied a performance award. **Defendant's Appendix**, APPX 005. Unlike the plaintiff in *Clark*, Wolfe, in her administrative complaint, did not identify two separate causes of action.

Secondly, the plaintiff in *Clark* was a private sector employee. Third, unlike the plaintiff in *Clark*, the relevant issue was specifically framed by the EEO Director, and Wolfe agreed that the issue so framed was the one she was presenting. Even if Wolfe had intended to include a disparate treatment claim, she abandoned that claim by failing to object to the issue framed by the EEO Director. *Clayton*, 106 Fed.Appx. at 271.

11

Fourth, in *Clark*, questions during the EEOC investigation were directed to whether males and other females in Clark's position received comparable work assignments and duties, which questions were deemed to be consistent with an EEOC inquiry into a gender-based disparate treatment claim. *Clark*, 18 F.3d at 1280-81. Here from the very beginning of the Fact-Finding Conference, the framed issue was restated as whether Wolfe had been harassed and subjected to a hostile work environment on the bases of age and sex from 17 July, 2011 to 29 February, 2012, and she was advised that questions would be related to the specifics of that allegation. **Defendant's Appendix**, APPX 020.  Wolfe was not asked questions about comparable work assignments of males and females.

Finally, assuming that this Court were to find that Wolfe has exhausted administrative remedies for disparate treatment claims based upon gender and age, she must overcome the limitations bar initially raised by defendant.  The rule in *Morgan* which benefits her hostile work environment claim does not save her disparate treatment claims.  As noted above, a federal employee who believes she has been discriminated against "must initiate contact with a[n EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  **29 C.F.R. § 1614.105(a)(1).**

Wolfe first contacted an EEO official on February 21, 2012 and filed a formal complaint of discrimination on March 9, 2012. **Defendant's Appendix**, APPX 002. Disparate treatment claims regarding her alleged constructive discharge on February 29, 2012 and for being relieved as Chief of Contract Administration Services on February 10, 2012 would be timely. The remaining events identified in her administrative complaint are time-barred as being outside the 45-day time period. This Court believes, based upon *Clayton*, that the only exhausted claim is Wolfe's cause of action for a hostile work environment. Nevertheless, out of an abundance of caution, her allegations of disparate treatment shall also be addressed as to her alleged demotion of February 10, 2012 and alleged constructive discharge.

## 3. Hostile Work Environment

"To state a hostile work environment claim under Title VII[4], the plaintiff must show that: (1) the victim belongs to a protected group; (2) the victim was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment affected a term, condition, or privilege of employment; and (5) the victim's employer knew or should have known of the harassment and failed to take prompt remedial action." *Watson v.*

---

[4]The Court is uncertain whether the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) for disparate treatment claims is also applicable to hostile work environment claims. *Compare Carrera v. Commercial Coating Services Intern., Limited*, 422 Fed.Appx. 334, 337 (5th Cir. 2011) *with McBride v. Amer Technology, Inc.*, 2013 WL 2541595, at *4 n.2 (W.D.Tex. 2013). The parties do not specifically address this matter.

*Kroger Texas, L.P.*, 576 Fed.Appx. 392, 393 n.3 (5th Cir. 2014)(*quoting* *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007)).  To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abuse working environment.  *Morgan*, 536 U.S. at 116.  The Courts look at "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Barkley v. Singing River Elec. Power Ass'n*, 433 Fed.Appx. 254, 257 (5th Cir. 2011)(*quoting* *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 434 (5th Cir. 2005)).

The identifiable events which form the basis for Wolfe's claim that she was subjected to a hostile work environment are:

(1) relieved as Chief of Policy and Assessment on July 17, 2011;

(2) reassigned as Chief of Special Staff on July 18, 2011, which included supervision of interns assigned to Contract Administration Services;

(3) relieved of her duty of supervising interns assigned to Contract Administration Services on August 4, 2011;

(4) denied performance award on August 23, 2011;

(5) assigned the duties of supervising interns assigned to Contract Administration Services on December 18, 2011;

14

(6) relieved of her duties of supervising interns assigned to Contract Administration Services on February 10, 2012; and,

(7) constructive discharge effective February 29, 2012.

**Defendant's Appendix**, APPX 125.

Review of the summary judgment evidence fails to create a genuine issue of fact regarding Wolfe's claim that she was subjected to a hostile work environment based upon her age or sex. She was a member of a protected group and was subjected to what she perceived to be unwelcome harassment. However, no summary judgment evidence indicates that the alleged harassment was based on a protected characteristic or that it affected a term, condition, or privilege of Wolfe's employment. *Watson*, 576 Fed.Appx. at 393 n.3.

Wolfe's testimony from the Fact-Finding Conference of October 16, 2012 indicates that the source of the alleged hostile work environment was Sharon Seiffert, the Deputy Director to the Brigade Commander and Wolfe's first-line supervisor.[5] Colonel Sanders, the Brigade Commander, testified that he was aware of "significant friction" between Seiffert and Wolfe. **Defendant's Appendix**, APPX 104. Wolfe was not alone. Other employees, men and women of various ages, complained about Seiffert's professionalism. **Id.**, APPX 68, 104, 117. When Colonel Sanders discussed this matter with Seiffert, she was disrespectful to him which resulted in the

---

[5]Although Wolfe asserts that Seiffert attributed her actions to Colonel Sanders, the Brigade commander, Wolfe has provided no evidence directly connecting Colonel Sanders to any alleged harassment.

issuance of a letter of reprimand in January 2012.  **Id.**, APPX 069.

Shortly thereafter, Seiffert left the Brigade.  **Id.**, APPX 067.  Of

course, workplace drama is not unusual.  It is only redressable if,

in this case, Wolfe can establish she was subjected to unwelcome

harassment based upon her sex or her age.

Based upon her statements, even Wolfe did not attribute the

actions taken against her to age or sex.  Regarding her move from

Policy and Assessment to Chief of Special Staff in July 2011, Wolfe

stated that she did not know if Seiffert was even aware she was

discriminating against her. **Defendant's Appendix**, APPX 023.  When

Wolfe told Colonel Sanders that she intended to file a complaint

against Seiffert, she did not state that it would be based upon age

or sex.  **Id.**, APPX 103.  During the Fact-Finding Conference on

October 16, 2012, Wolfe was asked why she believed Seiffert changed

her duties.  **Id.**, APPX 022.  Wolfe responded, "I guess because she

felt that I wasn't doing a good job," not because Wolfe is a woman

or because Wolfe was 68 years old.  **Id.**

In her response brief, Wolfe describes her July reassignment

from Chief of Policy and Assessment to Chief of Special Staff as a

demotion.  She states that she was only moved after Mike Hollon,

her subordinate and a younger male, was given her position.  The

summary judgment evidence does not substantiate that this

reassignment was a demotion.  Wolfe acknowledged that she remained

a GS-14 and did not lose any pay. **Defendant's Appendix**, APPX 043.

16

When asked why she believed she had been transferred, Wolfe once again did not attribute Seiffert's actions to her sex or age but to favoritism. **Id.**, APPX 012-013, 026, 030, 032. Wolfe admitted that everyone, even she, had favorites. **Id.**, APPX 053-054. She stated, "Maybe it was their personality, how personable they were or how truthful they could be and up front." **Id.**, APPX 054. Wolfe admitted that having a favorite did not necessarily equate with discrimination. **Id.**

Wolfe also focuses on her replacement by Mike Hollon, a younger male, as a basis for her claim of a hostile work environment. In her brief, she states, "... her job position was given to her subordinate Mr. Hollon." **Response**, p. 9. In fact, Hollon was recommended by an external board and chosen by Colonel Sanders from among 26 applicants. **Defendant's Appendix**, APPX 122-123. Wolfe contends that Seiffert, as the Deputy Director for the organization, gathered and presented the information to the board that made the decision to hire Hollon. Significantly, however, Wolfe, though eligible, never even applied for the position for which Hollon was selected. **Id.**, APPX 117-118. She can hardly complain now that his selection is evidence of a hostile work environment.

In her testimony at the Fact-Finding Conference of October 16, 2012, Seiffert explained her reasoning for transferring Wolfe from Policy and Assessment. Seiffert stated that when she arrived at

17

the Brigade, Policy and Assessment were two separate divisions. **Defendant's Appendix**, APPX 075.  Wolfe was in charge of Assessment and Kim Drake was in charge of Policy.  **Id.**  Drake took a job elsewhere, so her GS-14 position became vacant.  **Id.**  At that time, Guadalupe Hernandez, a GS-13, was temporarily promoted into the position during the hiring process.  **Id.**

Meanwhile, the Brigade was undergoing a total and constant reorganization.  **Defendant's Appendix**, APPX 076, 101.  Policy and Assessment were merged together.  **Id.**  Seiffert organized the board of individuals who recommended Mike Hollon for the position, who was then selected by Colonel Sanders.  **Id.**, APPX 069-070, 075-076, 122-123.  Wolfe was then moved into a GS-14 position as Chief of Special Staff where she supervised quality assurance personnel and interns in Contract Administration Services.  **Id.**, APPX 076. Seiffert stated, "She (Wolfe) was not only the only available 14 I had, but she was the only one who had any experience in those areas of quality control.  She was the best candidate for the position." **Id.**, APPX 076-077.  Wolfe has not disputed that she was the best GS-14 for the position to which she was transferred.

Wolfe also complains that her subsequent changes of assignments are further evidence of continuing harassment by Seiffert.  Seiffert stated that, after July 2011, Wolfe was managing the interns because the GS-13 who worked for her had taken another job.  Seiffert was receiving complaints from the interns

18

regarding Wolfe's lack of supervision. **Defendant's Appendix**, APPX 0077-78. Apparently, as a result, Wolfe was relieved of her responsibility of managing interns around August 4, 2011 and was moved to G8. **Id**. Wolfe was reassigned back to Contract Administration Services in December 2011 when the GS-13 who Seiffert had promoted left the job, leaving the interns with no one to manage them. **Id.**, APPX 078-079.

Seiffert stated that each time she selected Wolfe for reassignment, during the reorganization, she did so because of her experience and the conditions within the organization. **Defendant's Appendix**, APPX 087. The duties of other employees were also changed during the reorganization for males and females over 40. **Id.**, APPX 064-065. Wolfe's problems with performance also contributed to the decisions to change her assignments. Seiffert testified that, in her discussions with Wolfe, she explained to her that she was not performing up to standards, and that she was being moved to another area in the hope that it would give her an opportunity to improve her performance. **Id.**, APPX 084. Wolfe has presented no summary judgment evidence to the contrary.

Wolfe believes that because Mike Hollon received a performance award and she did not, it must be based upon her sex. **Defendant's Appendix**, APPX 026. This conclusion is unsupportable. Seiffert explained why Wolfe did not receive a performance award. She stated that the rating she gave Wolfe was based on her performance,

and that others in the Brigade, male and female, received the same rating. **Defendant's Appendix**, APPX 081. None of those individuals received a performance award. **Id.** Seiffert provided several reasons for giving Wolfe the rating she was assessed: (1) Wolfe sent documents with errors, (2) it took two, three or four times to correct the errors, and (3) she failed to complete an understandable training plan for interns. **Id.**, APPX 082-083.

In her testimony, Wolfe states that she participated in a Procurement Management Review, as did other employees who received an award, and explains why she was disoriented, did not receive e-mails and other documents and did not know what was going on, as Seiffert indicated. **Response**, exh. B, bates nos. 000296-299. Wolfe fails to provide a performance evaluation for any employee who either did or did not receive an award. Thus, she has not created an arguable issue that she was denied a performance award due to a hostile work environment based upon her sex or age.

Wolfe asserts that Seiffert made several age-related comments. In June 2011, Seiffert critiqued Wolfe as being disoriented and for losing documents and not appearing to know what was going on. **Defendant's Appendix**, APPX 025-026, 130. Wolfe believes these comments are references to her age and suggest she is suffering from dementia. The Court disagrees. Seiffert pointed to specific problems with Wolfe's performance *in the absence of her employees*. She advised Wolfe that, as a leader and supervisor, she needed to

be less dependent on her employees.  The comments were not age-related.

Wolfe also refers to a statement by Seiffert made in late June 2011 at the end of the feedback session.  **Response**, exh. B, bates no. 000307.  When asked during the Fact-Finding Conference why she believed Seiffert favored Mike Hollon over her, Wolfe responded, "Well, if I'm being told as I get older, our performance goes down, and he's young and he's upgoing and all this, that's the way I took it."[6]  **Id.**, bates no. 000311.  Wolfe also offers the unsigned declaration of Marsha L. Patin who states she heard Seiffert comment several times about Wolfe's age and say Wolfe was an older woman who had been there too long who was not contributing any more.  **Id.**, exh. C.  Patin also indicates that Seiffert told her (Patin) that she should not apply for a certain position because the men on the staff would not respond to her because she is a woman, suggesting to Patin that Seiffert had a sex-related bias.[7]  **Id.**

Where a plaintiff offers remarks as direct evidence, the Court applies a four-part test to determine whether they are sufficient to overcome summary judgment.  ***Reed v. Neopost USA, Inc.***, 701 F.3d

---

[6]Although Wolfe's brief contains exact quotes, no quotes from Seiffert are presented in the summary judgment evidence.

[7]Defendant briefly challenges the admissibility of Patin's declaration in a footnote because it is unsigned.  Without determining this matter, the Court will assume that the declaration, which is part of the administrative record, can be considered.  **Defendant's Appendix**, APPX 019.

434, 441 (5th Cir. 2012)(*citing **Brown v. CSC Logic, Inc.**,* 82 F.3d 651, 655 (5th Cir. 1996)(holding that "[r]emarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.")). Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, the Court applies a more flexible two-part test in which the plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. ***Id.***

A workplace environment is hostile when it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment." ***Reed***, 701 F.3d at 443 (*quoting **Dediol v. Best Chevrolet, Inc.**,* 655 F.3d 435 (5th Cir. 2011)).  In assessing whether a claim meets that standard, courts review "all of the relevant circumstances, including the frequency of the conduct, its severity, whether it is physically threatening or humiliating or it is a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." ***Id.*** (*quoting **City of Hous. v. Fletcher**,* 166 S.W.3d 479, 489 (Tex.App.—Eastland

2005, pet. denied)).  "Incidental or occasional age-based comments, discourtesy, rudeness, or isolated incidents (unless extremely serious) are not discriminatory changes in the terms and conditions of a worker's employment." *Id.*

Wolfe has offered vague remarks of Seiffert which are age-related.  While Seiffert's comment to Wolfe was made once in June 2011, Wolfe provides no indication as to the time Seiffert's statements to Patin were made.  Patin's statement that Seiffert "commented several times" about Wolfe's age is ambiguous and insubstantial. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)("Where comments are vague and remote in time they are insufficient to establish discrimination."). *Cf. Dediol*, 655 F.3d at 441 (plaintiff demonstrated severe harassment in ADEA/hostile work environment case when he was called names like "old mother* * * * * *," "old man," and "pops" a half-dozen times daily); and *Moody v. United States Sec'y. of Army*, 72 Fed.Appx. 235, 238-39 (5th Cir. 2003)(the following statements: "Granny, have you not got anything to do?"; "See that old woman and she will take care of you."; "Old woman, when are you going to retire and go home so someone younger can have a job?"; and, "Granny, when are you going to retire and let someone younger have a job?" were not sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment). The summary judgment evidence presented by Wolfe of age-related

remarks demonstrates no frequency of comments by Seiffert nor does it suggest that her remarks were severe, physically threatening or humiliating.  They were more in the nature of merely offensive utterances which did not interfere with Wolfe's work performance. As such, they are properly categorized as incidental or occasional age-based comments, which though discourteous or rude, represent isolated incidents insufficient to create a genuine issue of fact regarding the existence of a hostile work environment based upon age.

In her Statement of Facts, attached to her response brief, Wolfe asserts that, during Brigade meetings, Seiffert would demean Wolfe in front of her subordinates or simply ignore any input that Wolfe would offer.  In the Fact-Finding Conference, Wolfe testified that, "I felt worthless. I felt like when I spoke, I was turned off. It wasn't important. When I talked during our weekly meetings, I felt that I was, you know, shoved to the side. I don't [want] to hear what you're saying. That's not a good feeling because people are smart. They pick up on that." **Response**, exh. B, bates no. 000306.  In her declaration, Marsha Patin states that Seiffert made condescending remarks to Wolfe in front of Hollon and Patin, and would be rude to Wolfe and cut her off when she was speaking.  **Id.**, exh. C.

Such evidence is consistent with the lack of professionalism demonstrated by Seiffert towards several employees of the Brigade

discussed above.   Wolfe contends that merely because other employees complained of Seiffert's unprofessionalism does not negate her claims of discrimination based upon her age and gender. Wolfe cannot defeat defendant's motion simply by stating that discrimination is one possible explanation for Seiffert's actions. To avoid entry of summary judgment, Wolfe bears the burden of creating a genuine issue of fact on every essential element of her case.   *Celotex Corp.*, 477 U.S. at 322.   The Court can assume Seiffert was rude, disrespectful and condescending to Wolfe during these meetings.  Unless that behavior was based upon Wolfe's sex or age, and Wolfe presents proof to that effect, it does not create a genuine issue of fact on her claim that she was subjected to a hostile work environment.

Next, in her Statement of Facts, Wolfe indicates that while she was still working as the Chief of Policy and Assessment GS-14, it was expected for Wolfe, as the Section Chief, to participate in inspections of field contracting offices.  She states that when she asked about an upcoming inspection, Seiffert told her that Colonel Sanders wanted only the "younger" section members to attend. According to Wolfe, only Mike Hollon and Marsha Patin, both subordinates of Wolfe's, conducted the inspections.  Wolfe cites no summary judgment evidence in support of this alleged fact.

In her Statement of Facts, Wolfe asserts that a later internal investigation determined that despite relieving Wolfe of her duties

as Chief of Policy and Assessment, Seiffert was unable to provide documentation to support her reasons for relieving Wolfe of her duties, re-assigning her to manage interns or for not providing a performance reward that she had earned in August of 2011.  Wolfe also cites no summary judgment evidence in support of this alleged fact.  According to Wolfe, prior to Seiffert's departure from the Brigade, Seiffert called a meeting with Wolfe and Maj. Nile Clifton, during which she apologized to Wolfe for the way she had treated her and told her that everything she had done to her had been on the orders of Colonel Sanders.  Wolfe cites no summary judgment evidence in support of this alleged fact.

In addition to failing to create a genuine issue of fact regarding unwelcome harassment based upon sex or age, Wolfe has failed to present proof that the alleged harassment affected a term, condition, or privilege of employment.  **Watson**, 576 Fed.Appx. 393 n.3.  To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.[8]  **Morgan**, 536 U.S. at 116.  Wolfe was asked if the "harassment change[d] the conditions of your employment or your benefits in any way?" and responded "No."  **Defendant's Appendix,**

---

[8]As evidence that the harassment was "severe and pervasive," Wolfe offers testimony from Bennie Wendell Rush who stated that he saw Wolfe exit Seiffert's office on more than one occasion "sobbing with -- tears on her face."  **Response**, exh. B, bates no. 000389.  Rush did not testify concerning the circumstances of the encounters between Seiffert and Wolfe on those or any other occasions.

APPX 033.  While she says she is sure it interfered with her work performance, she was not counseled or admonished about her performance after June 2011, i.e., at anytime during the alleged period of the hostile work environment, July 2011 through February 2012.  **Id.**, APPX 033-034.  Wolfe denied that the alleged harassment affected any  employment opportunity for her.  **Id.**, APPX 034.

Wolfe has failed to create a genuine issue of fact regarding her claim that she was subjected to a hostile work environment based upon her age or sex.  She has not presented sufficient evidence to show that she was subjected to unwelcome harassment based upon her age or sex which affected a term, condition, or privilege of her employment.  Wolfe was transferred from Policy and Assessment after failing to apply for the job she vacated.  Her "transfers" thereafter were little more than changes in assignments involving supervision and loss of supervision of interns.  Wolfe has presented no summary judgment evidence as to the other changes in job duties.  She never lost pay or benefits associated with a GS-14.

The summary judgment evidence fails to create a genuine issue of fact that the reassignments or the denial of her performance award were related to her sex or her age.  Furthermore, by Wolfe's own admissions, these actions were not sufficiently severe or pervasive so as to alter the conditions of Wolfe's employment or to create an abusive working environment.  Defendant's motion for

27

summary judgment should be granted on Wolfe's claim that she was subjected to a hostile working environment based upon her sex or age.

## 4. Constructive Discharge

Wolfe also contends that the conditions were so intolerable that she was forced to resign.  In a hostile work environment constructive discharge claim, the plaintiff must show working conditions so intolerable that a reasonable person would have felt compelled to resign. ***Pennsylvania State Police v. Suders***, 542 U.S. 129, 147 (2004); ***Perret v. Nationwide Mut. Ins. Co.***, 770 F.3d 336, 338 (5th Cir. 2014).  Several factors are relevant to constructive discharge, including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not. ***Perret***, 770 F.3d at 338 (*quoting* ***Aryain v. Wal-Mart Stores Texas LP***, 534 F.3d 473, 481 (5th Cir. 2008)).  A constructive discharge claim "requires a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." ***Burrle v. Plaquemines Parish Government***, 553 Fed.Appx. 392, 395 (5th Cir. 2014)(*quoting* ***Landgraf v. USI Film Products***, 968 F.2d 427, 430 (5th Cir. 1992)).  If a constructive discharge claim rests on the same evidence as her

28

hostile work environment claim, and if the plaintiff has not alleged evidence sufficient to preclude summary judgment on the latter claim, she also cannot survive summary judgment on the former claim. *Cavalier v. Clearlake Rehabilitation Hosp., Inc.*, 306 Fed.Appx. 104, 107 (5th Cir. 2009).

For the reasons discussed above, summary judgment should also be granted on Wolfe's hostile work environment constructive discharge claim. She was not subjected to a demotion or a reduction in salary. Her job responsibilities were reduced only when management of interns was removed. However, the summary judgment evidence establishes that Wolfe complained both when she was given supervision of the interns and when supervision was taken away. **Defendant's Appendix**, APPX 049-050. She was not reassigned to menial or degrading work, and was not badgered, harassed, or humiliated in a manner calculated to encourage her resignation. No one suggested that Wolfe take early retirement. **Id.**, APPX 029.

In fact, Wolfe initiated the idea of retirement in August 2011. *Wolfe* asked Seiffert to investigate an early buyout which Seiffert agreed to do. **Defendant's Appendix**, APPX 064, 143. Wolfe indicated then that she would retire at the end of February 2012. **Id.** Wolfe applied for retirement in November 2011. **Id.**, APPX 149. In February 2012, after Seiffert had left the Brigade, Colonel Sanders tried to talk Wolfe out of retiring. **Id.**, APPX 055, 066. As the summary judgment evidence discussed above shows, Seiffert

29

was Wolfe's first-line supervisor and the person she blamed for all of the actions which created the alleged hostile work environment. Despite the fact that Seiffert was gone and Wolfe was encouraged to stay by Colonel Sanders, she chose to retire.  The summary judgment falls woefully short of creating a genuine issue of fact on Wolfe's claim that she was subjected to a hostile work environment constructive discharge.  Defendant's motion for summary judgment should be granted on this claim as well.

## 5. Disparate Treatment

As discussed above, out of an abundance of caution, the Court will address Wolfe's allegations of disparate treatment based upon her age and sex regarding her alleged demotion of February 10, 2012 and alleged constructive discharge.  Under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), Wolfe must first  establish a *prima facie* case of discrimination.  *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014).  If she does so, then defendant must articulate a legitimate, nondiscriminatory reason for its actions.   *Id*. Finally, the burden shifts back to the Wolfe to show that defendant's proffered reason is pretextual.   *Id*.

To establish a discrimination claim under Title VII (or the ADEA), a plaintiff must prove that she was subject to an "adverse employment action"—a judicially-coined term referring to an employment decision that affects the terms and conditions of

employment. ***Thompson v. City of Waco, Texas***, 764 F.3d 500, 503 (5th Cir. 2014). ***See Cardiel v. Apache Corp.***, 559 Fed.Appx. 284, 288 (5th Cir. 2014). Adverse employment actions consist of "ultimate employment decisions" such as hiring, firing, demoting, promoting, granting leave, and compensating. ***Id.*** "[A]n employment action that 'does not affect job duties, compensation, or benefits' is not an adverse employment action." ***Pegram v. Honeywell, Inc.***, 361 F.3d 272, 282 (5th Cir. 2004)(*quoting* ***Banks v. E. Baton Rouge Parish Sch. Bd.***, 320 F.3d 570, 575 (5th Cir. 2003)).

Regarding the employment action on February 10, 2012, Wolfe was not reassigned, was not reduced in grade and did not lose pay. The only action taken against Wolfe was removal of supervision of the interns. The mere loss of some job responsibilities does not constitute an adverse employment action. ***Thompson***, 764 F.3d at 504. Wolfe cannot recover under Title VII or the ADEA for the alleged discrimination based upon her sex or age on February 10, 2012.

The Court has previously addressed the elements of Wolfe's constructive discharge claim. She has not established a genuine issue of fact regarding a ***prima facie*** case. Wolfe has failed to show that working conditions were so intolerable that a reasonable person would have felt compelled to resign. ***Perret***, 770 F.3d at 338. On the contrary, the summary judgment evidence establishes that Wolfe initiated plans to retire in February 2012 as far back

as August 2011, that she sought to obtain, and presumably did, a significant buyout, that she submitted her application to retire in November 2011, and that she retired despite Colonel Sanders' request that she remain employed with the Brigade, after Seiffert had departed.   Clearly, her resignation was not submitted under intolerable circumstances.   Defendant's motion for summary judgment should be granted on Wolfe's claims of disparate treatment based upon sex and age on February 10, 2012 and February 29, 2012 for constructive discharge.

<u>**Recommendation**</u>

It is, therefore, the recommendation of the Magistrate Judge that defendant's motion for summary judgment be **GRANTED.**

**Instructions for Service and**
<u>**Notice of Right to Object**</u>

The District Clerk shall serve a copy of this Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested.   Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. ***Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge.***   A party's failure to file written objections to the findings, conclusions, and recommendations contained in this

report within 14 days after being served with a copy shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** January 28, 2015.

_____
JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE

33